**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X

JOSEPH A. ARCE,

Plaintiff,

- against –

CSC HOLDINGS, LLC,

Defendant.

---------------------------------------------------------------X

Case No.

**COMPLAINT**

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Plaintiff, JOSEPH A. ARCE, by and through his attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, hereby complains of the Defendant CSC Holdings, LLC, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff brings this action charging that Defendant violated the discrimination and retaliation provisions of: (i) **Title VII of the Civil Rights Act of 1964**, as amended, 42 U.S.C. § 2000e, *et. seq*. ("Title VII"); (ii) the **New York State Human Rights Law**, New York State Executive Law, § 296 *et seq*. ("NYSHRL"); (iii) **42 U.S.C. § 1981** ("Section 1981"); and (iv) the **Suffolk County Human Rights Law**, Laws of Suffolk County, New York, Part II § 528 et seq. ("SCHRL")and seeks damages to redress the injuries Plaintiff has suffered as a result of having suffered discrimination based on race, national origin, and his perceived sexual orientation, as well having been subjected to retaliation after complaining about discrimination and harassment to Defendant's agents and supervisors.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e-5(f)(3), and pursuant to 28 U.S.C. § 1331, because this action arises under Title VII and Section 1981, and

pursuant to 28 U.S.C. § 1332(a)(1), as the matter in controversy exceeds the value of $75,000 and this action is between citizens of different states.

3. The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

4. Venue is proper in this district in that the events or omissions giving rise to the claims occurred within the Eastern District of New York. 28 U.S.C. § 1391(b) and 42 U.S.C. §2000e-5(f)(3).

## PROCEDURAL PREREQUISITES

5. Plaintiff filed charge of discrimination, upon which this Complaint is based with the Equal Employment Opportunity Commission ("EEOC").

6. Plaintiff received a Notice of Right to Sue from the EEOC dated July 16, 2026 with respect to this charge of discrimination. A copy of the Notice is annexed to this Complaint.

7. This action is being commenced within 90 days of receipt of the Notice of Right to Sue.

## PARTIES

8. At all times material, Plaintiff Joseph A. Arce ("Arce") was and is a resident of the State of New York.

9. Plaintiff is a Heterosexual Hispanic Male.

10. At all times material, Plaintiff was and is a "person" and an "employee" of Defendant and entitled to protection as defined by TITLE VII, the NYSHRL, and the NYCHRL.

11. At all times material, Defendant CSC Holdings, LLC ("Defendant") was and is a Delaware Limited liability Company, with principal place of business on Long Island, New York.

## MATERIAL FACTS

12. On or about June 13, 2022, Plaintiff began working for Defendant as a Full Time Retail Sales Consultant earning twenty-one ($21.00) dollars per hour plus the opportunity to work overtime and earn commissions.

13. As a Retail Sales Consultant, Plaintiff's job duties and responsibilities included selling products, selling services and providing customer service.

14. Upon Plaintiff's hire, Plaintiff worked under the supervision of Craig Sadowsky ("Sadowsky").

15. Upon information and belief, Sadowsky was the Manager of Defendant's storefront locations located at 1070 E. Jericho Turnpike, Huntington, New York 11743 (the "Huntington Location") and 1600 Motor Parkway, Hauppauge, New York 11788 (the "Hauppauge Location").

16. Although Plaintiff was initially hired to work at the Huntington Location, Sadowski subsequently required Plaintiff to alternate shifts between the Huntington and Hauppauge Location.

17. Upon information and belief, Josue Gomez ("Gomez") was and is the Supervisor of the Hauppauge Location.

18. At all relevant times, as Supervisors, Sadowsky and Gomez had the authority to affect the terms and conditions of Plaintiff's employment.

19. Additionally, as Supervisors, Sadowsky and Gomez had a duty to escalate complaints of discrimination brought by their subordinates, or at the minimum, respond in a reasonable manner.

20. Within months of Plaintiff's hire, he excelled in his sales. In fact, on numerous occasions, Sadowsky regularly commended Plaintiff's performance and sales metrics, referring to Plaintiff as, "The Best Rep."

21. Although Plaintiff was satisfied with his position, he aspired to achieve a management level position, which aligned with his prior work experience.

22. In or around October 2022, Plaintiff began apartment hunting hoping to relocate closer to Defendant's Hauppauge Location. As a result, he began asking his colleagues about affordable areas on Long Island.

23. Shortly thereafter, Plaintiff, unable to secure an affordable apartment near the Hauppauge Location, explored the possibility of a transfer with Sadowsky.

24. In response, Sadowsky vehemently objected to Plaintiff's transfer as his sales metrics were exemplary.

25. Instead, Sadowsky insisted that Plaintiff move in with him and his family temporarily until he found an affordable apartment near the Hauppauge Location. Despite, Plaintiff's hesitation, Sadowsky continued to insist and further offered to allow him to stay at his home rent free.

26. Plaintiff unable to secure an affordable apartment near the Hauppauge Location or transfer to a location that would minimize his lengthy and expensive commute, was left with no choice but to accept Sadowsky's offer.

27. Shortly thereafter, Plaintiff moved in with Sadowsky and his family.

28. On several occasions, Sadowsky and his wife began to invite Plaintiff to "Party." Plaintiff understood their invitation to "party" to include sniffing cocaine, using other elicit drugs, drinking, and any licentious acts that follow such behavior.

29. Plaintiff often observed Sadowsky behaving erratically during the time he was temporarily living in Sadowsky's home. To wit, Sadowsky would regularly go into Plaintiff's room in the early morning hours, seemingly under the influence of cocaine urging Plaintiff to join him for a cigarette.

30. In response, Plaintiff rejected each and every invitation as he was only living with Sadowsky and his family temporarily and required only a roof over his head until he found an apartment.

31. Sadowsky inappropriately yielded his supervisory authority over Plaintiff by offering and allowing Plaintiff to move in with him only after denying Plaintiff the opportunity to transfer in a sole effort to obtain control over Plaintiff.

32. Within the month of October 2022, after Plaintiff's numerous rejections of Sadowsky and his wife's invitations to "party," Sadowsky initiated a campaign of discrimination against Plaintiff on the basis of his race, national origin, and perceived sexual orientation. By way of example, Sadowsky regularly referred to Plaintiff as "faggot," and "nigger." Moreover, Sadowsky would approach Plaintiff while Plaintiff was attending to Spanish speaking customers and state, "Yo Quiero Taco Bell."

33. Sadowsky's harassing and discriminatory behavior ensued over the course of approximately six (6) months.

34. In October 2022, Sadowsky first publicly humiliated Plaintiff on the sales floor, in the presence of customers and staff members, screaming at Plaintiff, "You're Gay," and "You're a Faggot."

35. Although Plaintiff is a heterosexual male, Sadowsky perceived Plaintiff as homosexual solely based on Plaintiff's admission that he enjoyed eating croissants during a casual

conversation with his colleagues. Sadowsky then used Plaintiff's admission regarding his preference for eating croissants as a running "joke" amongst Plaintiff's colleagues to cause Plaintiff embarrassment.

36. Upon information and belief, Sadowsky was known to regularly be under the influence of cocaine through the course of his workday and his discriminatory outbursts were often a result of his drug use.

37. Shortly thereafter Plaintiff, verbally complained to Store Supervisor Gomez regarding Sadowsky's discriminatory, harassing, and humiliating behavior.

38. In response, Gomez told Plaintiff that there was nothing that could be done.

39. Upon information and belief, Gomez did not escalate Plaintiff's complaint of discrimination and harassment.

40. In the months that followed, Sadowsky regularly called Plaintiff a "dumb nigger," or "nigger" to his face, both privately and in the presence of others.

41. Seeking resolution, Plaintiff would verbally complain to Gomez each time, detailing Sadowsky's use of racial epithets and harassing behavior, to no avail.

42. Instead, Gomez would dismiss, minimize, and ignore Plaintiff's complaints.

43. Additionally, Gomez would urge Plaintiff not to disclose Gomez's knowledge of Sadowsky's behavior and Plaintiff's complaints to any employee or member of management. The effect of Gomez's statements encouraging Plaintiff to conceal Gomez's knowledge of Plaintiff's numerous verbal complaints was intended to circumvent his managerial duty to escalate such complaints. As a result, Gomez participated in furthering Sadowsky's discriminatory conduct.

44. Nevertheless, Sadowsky's behavior continued. Plaintiff, feeling helpless, continued to exhaust his efforts to secure new housing as Sadowsky's behavior at work was directly correlated to his living situation.

45. However, Plaintiff continued to verbally complain to Gomez with the hopes he would intervene and remedy the situation. Indeed, to emphasize the work environment Sadowsky's behavior created and furthered, Plaintiff told Gomez he was currently living with Sadowsky and he could no longer tolerate his abusive and offensive behavior.

46. Again, Gomez disregarded and minimized Plaintiff's complaints. Rather, Gomez by failing to intervene, reasonably respond, or remedy the situation, he participated in Sadowsky's discrimination and furthered the work environment Plaintiff was subjected to.

47. Immediately thereafter, Plaintiff verbally complained to another Supervisor, Jessica Thorpe ("Thorpe"), to no avail.

48. By failing to intervene, reasonably respond, or remedy the situation, Thorpe participated in Sadowsky's discrimination and furthered the work environment Plaintiff was subjected to.

49. Despite Sadowsky's continued harassment and discriminatory behavior, Plaintiff continued to excel at work.

50. In line with his excellent performance, in February 2023, Plaintiff received a successful had his annual performance review. As a result, Plaintiff was promised a one-dollar raise.

51. However, when Plaintiff received his first paycheck which was to include his recent raise, he realized his hourly rate was only raised by fifty cents.

52. Upon information and belief, Sadowsky interfered and lowered Plaintiff's raise from one dollar to fifty cents.

53. On or about April 1, 2023, at which point Plaintiff had previously made several verbal complaints to Store Manager Gomez regarding Sadowsky's continued harassment and discrimination to no avail, Plaintiff, in a desperate attempt to remedy his work environment, submitted a formal written complaint ("April 1st Formal Complaint") to Defendant's Human Resources Department ("HR Department").

54. Upon information and belief, Defendant's HR Department immediately investigated ("Investigation").

55. Upon information and belief, the Investigation lasted approximately ten (10) days and ultimately culminated in Sadowski's termination.

56. Upon information and belief, the Investigation revealed Plaintiff's numerous verbal complaints to Store Manager Gomez proceeding Plaintiff's April 1st Written Complaint.

57. Upon information and belief, Gomez was not subjected to any form of discipline for failing to respond or remedy Plaintiff's complaints of discrimination and harassment.

58. Upon information and belief, Defendant did not subject Gomez to any subsequent training regarding addressing employee complaints of discrimination, harassment, or retaliation. Instead, Gomez remained the Store Manager of Defendant Hauppauge's Location.

59. Since Sadowsky's termination, Defendant via its agents and supervisors have initiated acts to affect the terms and conditions of Plaintiff's employment in retaliation for his April 1st Formal Complaint.

60. This retaliation has taken the form, *inter alia,* of Plaintiff being subject to a spurious and unwarranted "investigation" having to do with alleged fraud in mobile sales.

61. As a result, Plaintiff's sales numbers were being scrutinized by Defendant's supervisors for the sole retaliatory purpose of preparing for Plaintiff's eventual termination or resignation.

62. These supervisors have even arranged to have Plaintiff watched via Defendant's surveillance cameras during his meal breaks and excessive scrutiny regarding Plaintiff's whereabouts whenever he stepped away from his work station.

63. Additionally, Defendant's Supervisors, in retaliation for Plaintiff's April 1st Complaint have hindered and prevented Plaintiff from obtaining a management level position. To that end, Plaintiff has applied for various positions and despite his qualifications and exemplary history of performance throughout his employment with Defendant, Plaintiff has not made it past the interview phase.

64. As a result of Defendant's actions via its agents and supervisors, including the discriminatory harassment he suffered from Sadowsky prior to Sadowsky's firing and the retaliatory conduct that he has endured since Sadowsky's termination, Plaintiff feels extremely humiliated, degraded, victimized, embarrassed, traumatized and emotionally distressed.

65. On or about February 9, 2024, Defendant informed Plaintiff that it was closing the store at which he worked and his employment would terminate on March 8, 2024.

66. While the store closure affected a number of Defendant's employees, upon information and belief, Defendant informed each of Plaintiff's similarly-situated co-workers that their employment would continue until March 15, 2024, one week after Plaintiff's termination date.

67. Upon information and belief, Defendant terminated Plaintiff one week earlier than his similarly-situated co-workers because he complained of discrimination, unlike his similarly-situated co-workers.

68. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer pecuniary losses, emotional pain, inconvenience, loss of enjoyment of life, physical distress, and other non-pecuniary harm.

**AS AND FOR A *FIRST* CAUSE OF ACTION**
**FOR NATIONAL ORIGIN DISCRIMINATION**
**UNDER TITLE VII**

69. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

70. Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e-2(a)(1), states in relevant part:

> It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to their compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or **national origin**[.]

64. As described above, Defendant discriminated against Plaintiff on the basis of his National Origin (Hispanic), in violation of Title VII, by creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment that included, among other things, severe or pervasive harassment of Plaintiff based on his race.

65. As a result of the unlawful discriminatory conduct of Defendant in violation of Title VII, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and

anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

66. The unlawful discriminatory actions of Defendant constitute malicious, willful, and wanton violations of Title VII, for which Plaintiff is entitled to an award of punitive damages.

**AS AND FOR A *SECOND* CAUSE OF ACTION**
**FOR RACE DISCRIMINATION**
**UNDER TITLE VII**

67. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

68. Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e-2(a)(1), states in relevant part:

> It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to their compensation, terms, conditions, or privileges of employment, because of such individual's **race**, color, religion, sex, or national origin[.]

64. As described above, Defendant discriminated against Plaintiff on the basis of his Race (Hispanic), in violation of Title VII, by creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment that included, among other things, severe or pervasive harassment of Plaintiff based on his race.

65. As a result of the unlawful discriminatory conduct of Defendant in violation of Title VII, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

66. The unlawful discriminatory actions of Defendant constitute malicious, willful, and wanton violations of Title VII, for which Plaintiff is entitled to an award of punitive damages.

**AS AND FOR A *THIRD* CAUSE OF ACTION**
**FOR SEX DISCRIMINATION**
**UNDER TITLE VII**

67. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

68. Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e-2(a)(1), states in relevant part:

> It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to their compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, **sex**, or national origin[.]

64. As described above, Defendant discriminated against Plaintiff on the basis of his perceived Sexual Orientation (Homosexual), in violation of Title VII, by creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment that included, among other things, severe or pervasive harassment of Plaintiff based on his race.

65. As a result of the unlawful discriminatory conduct of Defendant in violation of Title VII, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

66. The unlawful discriminatory actions of Defendant constitute malicious, willful, and wanton violations of Title VII, for which Plaintiff is entitled to an award of punitive damages.

**AS AND FOR A *FOURTH* CAUSE OF ACTION**
**FOR RETALIATION**
**UNDER TITLE VII**

67. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

68. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer:

> [T]o . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

69. As described above, Plaintiff engaged in protected activities, including making internal complaints to Defendant's Supervisors regarding discrimination based on Plaintiff's race.

70. As described above, after Plaintiff engaged in activity protected by Title VII, took adverse actions against Plaintiff by, inter alia, unilaterally transferring Plaintiff's job location, that would dissuade a reasonable employee from making or supporting a similar complaint of discrimination.

71. As a result of the retaliatory conduct of Defendant in violation of Title VII, Plaintiff has suffered, and continues to suffer pecuniary losses, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages, as well as past and future lost wages and benefits and other compensatory damages, and other relief.

72. The unlawful discriminatory actions of Defendant constitute malicious, willful, and wanton violations of Title VII, for which Plaintiff is entitled to an award of punitive damages.

**AS AND FOR A *FIFTH* CAUSE OF ACTION**
**FOR RACE DISCRIMINATION**
**UNDER SECTION 1981**

73. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

74. 42 U.S.C. § 1981 states in relevant part as follows:

75. All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

76. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 1981, by discriminating against Plaintiff because of his race (Black).

77. Plaintiff was subjected to negative disparate treatment, discrimination, humiliation, embarrassment, adverse employment actions and loss of employment due to his race.

**AS A *SIXTH* CAUSE OF ACTION**
**FOR RETALIATION**
**UNDER SECTION 1981**

78. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

79. By the acts and practices described above, Defendants retaliated against Plaintiff for his opposition to unlawful discrimination under 42 U.S.C. §1981.

80. Defendants acted with malice and/or reckless indifference to Plaintiff statutorily protected rights.

81. Plaintiff is entitled to the maximum amount of damages allowed under this statute.

**AS AND FOR A *SEVENTH* CAUSE OF ACTION**
**FOR SEXUAL ORIENTATION DISCRIMINATION**
**UNDER THE NYSHRL**

82. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

83. Executive Law § 296(1)(a) provides that:

> It shall be an unlawful discriminatory practice: For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, **sexual orientation**, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

84. As described above, Defendants discriminated against Plaintiff on the basis of his perceived sexual orientation (homosexual), in violation of NYSHRL, by creating, fostering, condoning, accepting, participating, ratifying, and/or negligently failing to prevent or remedy a hostile work environment that included, among other things, severe or pervasive harassment of Plaintiff based on Plaintiff's perceived sexual orientation (homosexual). As a result of Defendant's unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which she is entitled to an award of monetary damages and other relief.

85. As a result of Defendants' unlawful discriminatory conduct in violation of NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

86. Defendants' unlawful discriminatory actions constitute malicious, willful, and wanton violations of the NYSHRL, for which Plaintiff is entitled to an award of punitive damages.

**AS AND FOR AN *EIGHTH* CAUSE OF ACTION**
**FOR RACE DISCRIMINATION**
**UNDER THE NYSHRL**

87. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

88. Executive Law § 296(1)(a) provides that:

> It shall be an unlawful discriminatory practice: For an employer or licensing agency, because of an individual's age, **race**, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

89. As described above, Defendants discriminated against Plaintiff on the basis of his race (Hispanic), in violation of NYSHRL, by creating, fostering, condoning, accepting, participating, ratifying, participating, and/or negligently failing to prevent or remedy a hostile work environment that included, among other things, severe or pervasive harassment of Plaintiff based on Plaintiff's race (Hispanic). As a result of Defendant's unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which she is entitled to an award of monetary damages and other relief.

90. As a result of Defendants' unlawful discriminatory conduct in violation of NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and

anxiety, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

91. Defendants' unlawful discriminatory actions constitute malicious, willful, and wanton violations of the NYSHRL, for which Plaintiff is entitled to an award of punitive damages.

**AS AND FOR A *NINTH* CAUSE OF ACTION**
**FOR RETALIATION**
**UNDER NYSHRL**

92. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein.

93. Executive Law § 296 provides that, "7. It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has filed a complaint, testified, or assisted in any proceeding under this article."

94. As described above, Plaintiff engaged in protected activities, including but not limited to, making numerous internal complaints regarding discrimination against Sadowsky.

95. As described above, after Plaintiff engaged in activity protected by the NYSHRL, Defendant took adverse employment actions against Plaintiff that would dissuade a reasonable employee from making or supporting a similar complaint of discrimination.

96. As a result of Defendant's retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, pecuniary losses, severe mental anguish, and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages, as well as past and future lost wages and benefits and other compensatory damages, and other relief.

97. Defendant's unlawful retaliatory actions constitute malicious, willful, and wanton violations of the NYSHRL, for which Plaintiff is entitled to an award of punitive damages.

**AS AND FOR A *TENTH* CAUSE OF ACTION**
**FOR RACE DISCRIMINATION**
**<u>UNDER SCHRL</u>**

98. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

99. The Regulatory Local Laws of Suffolk County § 528-7(A)(1) provides that:

> It shall be an unlawful discriminatory practice: For an employer to refuse to hire or employ or to bar or to discharge from employment or to discriminate against any individual in promotion, compensation or in terms, conditions or privileges of employment because of such individual's group identity or status as a victim of domestic violence.

100. The Suffolk County Regulatory Local Laws §528-6 defines group identity as "[t]he actual or perceived **<u>race</u>**, color, creed, age, national origin, alienage or citizenship status, gender, sexual orientation, disability, marital status, or familial status of any individual, as well as the actual military status of any individual." (Emphasis added.)

101. As described above, Defendant discriminated against Plaintiff on the basis of his race in violation of the SCHRL by, including but not limited to, subjecting him to disparate working conditions, and denying him the opportunity to work in an employment setting free of unlawful discrimination and harassment. As a result of Defendants' unlawful discriminatory conduct in violation of the SCHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which he is entitled to an award of monetary damages and other relief.

102. As a result of Defendants' unlawful discriminatory conduct in violation of the SCHRL, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress,

including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

**AS AND FOR AN *ELEVENTH* CAUSE OF ACTION FOR SEXUAL ORIENTATION DISCRIMINATION UNDER SCHRL**

103. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

104. The Regulatory Local Laws of Suffolk County § 528-7(A)(1) provides that:

> It shall be an unlawful discriminatory practice: For an employer to refuse to hire or employ or to bar or to discharge from employment or to discriminate against any individual in promotion, compensation or in terms, conditions or privileges of employment because of such individual's group identity or status as a victim of domestic violence.

105. The Suffolk County Regulatory Local Laws §528-6 defines group identity as "[t]he actual or perceived race, color, creed, age, national origin, alienage or citizenship status, gender, **sexual orientation**, disability, marital status, or familial status of any individual, as well as the actual military status of any individual." (Emphasis added.)

106. As described above, Defendant discriminated against Plaintiff on the basis of his perceived sexual orientation in violation of the SCHRL by, including but not limited to, subjecting him to disparate working conditions, and denying him the opportunity to work in an employment setting free of unlawful discrimination and harassment. As a result of Defendants' unlawful discriminatory conduct in violation of the SCHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which he is entitled to an award of monetary damages and other relief.

107. As a result of Defendants' unlawful discriminatory conduct in violation of the SCHRL, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

**AS AND FOR AN *TWELFTH* CAUSE OF ACTION**
**FOR NATIONAL ORIGIN DISCRIMINATION**
**UNDER SCHRL**

108. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

109. The Regulatory Local Laws of Suffolk County § 528-7(A)(1) provides that:

> It shall be an unlawful discriminatory practice: For an employer to refuse to hire or employ or to bar or to discharge from employment or to discriminate against any individual in promotion, compensation or in terms, conditions or privileges of employment because of such individual's group identity or status as a victim of domestic violence.

110. The Suffolk County Regulatory Local Laws §528-6 defines group identity as "[t]he actual or perceived race, color, creed, age, **national origin**, alienage or citizenship status, gender, sexual orientation, disability, marital status, or familial status of any individual, as well as the actual military status of any individual." (Emphasis added.)

111. As described above, Defendant discriminated against Plaintiff on the basis of his National Origin in violation of the SCHRL by, including but not limited to, subjecting him to disparate working conditions, and denying him the opportunity to work in an employment setting free of unlawful discrimination and harassment. As a result of Defendants' unlawful discriminatory conduct in violation of the SCHRL, Plaintiff has suffered, and continues to

suffer, economic loss, for which he is entitled to an award of monetary damages and other relief.

112. As a result of Defendants' unlawful discriminatory conduct in violation of the SCHRL, Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

**AS AND FOR A *THIRTEENTH* CAUSE OF ACTION**
**FOR RETALIATION**
**UNDER SCHRL**

113. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

114. The Suffolk County Regulatory Local Laws § 528-12(B) provides that it shall be an unlawful discriminatory practice for an employer "to retaliate or discriminate against any individual because he or she has opposed any practice forbidden under this article…."

115. As described above, Plaintiff engaged in protected activities, including making internal complaints regarding Sadowsky's discrimination on the basis of Plaintiff's race and perceived sexual orientation.

116. As described above, after Plaintiff engaged in activity protected by the SCHRL, Defendant took adverse actions against Plaintiff by, inter alia, micromanaging Plaintiff, failing to promote Plaintiff for management positions he has applied to for which he is qualified, and making preparations for his eventual termination or resignation, that would dissuade a reasonable employee from making or supporting a similar complaint of discrimination.

117. As a result of Defendant's retaliatory conduct in violation of the SCHRL, Plaintiff has suffered, and continues to suffer pecuniary losses, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages, as well as past and future lost wages and benefits and other compensatory damages, and other relief.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendant:

A. Declaring that Defendant engaged in unlawful employment practices prohibited by Title VII, in that Defendant discriminated against Plaintiff on the basis of race, sex by way of Plaintiff's perceived sexual orientation, and National Origin by creating and maintaining a hostile work environment.

B. Declaring that Defendant engaged in unlawful employment practices prohibited by Section 1981, in that Defendant discriminated against Plaintiff on the basis of race by creating and maintaining a hostile work environment.

C. Declaring that Defendant engaged in unlawful employment practices prohibited by the NYSHRL, in that Defendant discriminated against Plaintiff on the basis of race and perceived sexual orientation by creating and maintaining a hostile work environment.

D. Declaring that Defendant engaged in unlawful employment practices prohibited by the SCHRL, in that Defendant discriminated against Plaintiff on the basis of race, national origin, and perceived sexual orientation by creating and maintaining a hostile work environment.

E. Awarding compensatory damages in favor of Plaintiff and against Defendant;

F. Awarding punitive damages in favor or Plaintiff and against Defendant;

G. Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of this action, along with prejudgment interest; and

H. Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and proper to remedy Defendant's unlawful conduct.

Dated: New York, New York
October 14, 2026

**PHILLIPS & ASSOCIATES,**
**ATTORNEYS AT LAW, PLLC**

_*/s/ Joshua M. Friedman*____________
Joshua M. Friedman, Esq.
*Attorneys for Plaintiff*
45 Broadway, 28th Floor
New York, New York 10006
T: (212) 248-7431
F: (212) 901-2107
jfriedman@tpglaws.com